UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

KRZYSZTOF STOJKOWSKI,                               Civ. No. 10-2390 (PJS/LIB)

      Petitioner,

v.                                                  **REPORT AND
                                                    RECOMMENDATION**

SCOTT PETER FISHER,

      Respondent.

---

This matter is before the Court upon Petitioner Krzysztof Stojkowski's Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241. Petitioner claims that the federal Bureau of Prisons (BOP) has failed to grant him credit for time spent in foreign custody in connection with the criminal charge for which he is now imprisoned. Respondent has filed a written opposition to the Petition contending that the BOP properly calculated Petitioner's sentence. The case has been referred the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1. For the reasons discussed below, the Court recommends that the Petition be denied and that this action be dismissed with prejudice.

**I.     BACKGROUND**

Petitioner Krzysztof Stojkowski is a federal prisoner who is currently confined at a federal correctional facility located in Marion, Illinois.[1] He is currently serving a 96-month

---

[1]     When Petitioner commenced this action on June 16, 2010, he was confined at the Federal Correctional Institution in Sandstone, Minnesota. Sometime thereafter, he was transferred to a prison facility in Marion, Illinois. Because Petitioner was incarcerated in Minnesota when he filed this case, the District of Minnesota has jurisdiction despite Petitioner's subsequent transfer to a facility out of state. See, Weeks v. Wyrick, 638 F.2d 690, 692 (8th Cir. 1981) ("Once the

sentence plus 5 years of supervised release imposed by the District Court for the Northern District of Illinois on December 15, 2006, following a conviction for bank fraud. (Kitka Decl., Dkt. 6, ¶ 3). His projected release date is February 13, 2012, via good conduct time release. (Id.)

On November 9, 2004, Petitioner was arrested in Canada on "two charges of misleading an officer to enter into an investigation." (Id. at ¶ 4, Attachment 1 (Presentence Investigation Report)).[2] On November 12, 2004, Petitioner was released from criminal detention on bail, but he was then remanded for a hold to determine his immigration status. (Id. at ¶5; Attachment 1).[3] On November 16, 2004, a detention review on the immigration charges was held and Petitioner was ordered to be released upon the deposit of a $20,000 cash bond and the posting of a $20,000 performance bond; however, Petitioner did not make the bond, and he was not released. (Id. at ¶ 6; Attachment 1). On November 22, 2004, an arrest warrant was issued in the United States District Court for the Northern District of Illinois pursuant to a criminal complaint alleging bank fraud for conduct related to the period of July 2001 through May 2002. (Id. at ¶ 7; Attachment 2).

Thereafter, on December 6, 2004, Petitioner became subject to a report that he was inadmissible to Canada for reasons of serious criminality. (Id. at ¶ 8; Attachment 1). A detention review was held on December 21, 2004, at which time it was determined that

---

custodian is properly served, subsequent transfer of the petitioner does not cause a loss of habeas corpus jurisdiction in the original district").

[2]  Petitioner has indicated that these charges were based on his failure to notify immigration officials of pending criminal charges in Illinois upon entry into Canada. (Petition, Dkt. 1-1, at p. 2 of 13).

[3]  The Respondent did not file Attachment One with its Response. Upon being notified of its mistake, Respondent filed Attachment One as Docket No. 12.

Petitioner was unlikely to appear for an admissibility hearing due to his history of absconding, his fugitive status in the United States for fraud-related activities, and the fact that he had been subject to numerous criminal investigations in both the United States and Canada. As such, Petitioner was ordered detained pending an admissibility hearing. (Attachment One). On February 21, 2005, Petitioner was ordered removed from Canada. (Kitka Decl. at ¶ 9; Attachment 1). Accordingly, on March 4, 2005, Canadian Border Security Agents brought Petitioner to the Rainbow Bridge Point of Entry into the United States to effectuate his removal from Canada where he was immediately arrested by the Federal Bureau of Investigation upon crossing the border. (Id. at 10; Attachment 1, 3). Petitioner was then transferred to the custody of the United States Marshal Service, which transported him to the Northern District of Illinois. (Id.) Following his bank fraud conviction Petitioner was sentenced on December 15, 2006, and he was designated to the Federal Correctional Institution in Allenwood, Pennsylvania. (Id. at ¶ 12; Attachment 5). Petitioner arrived at the designated facility on May 8, 2007. (Id.)

The BOP determined that Petitioner's sentence commenced on December 15, 2006, or the day on which his sentence was imposed. In addition, he was given credit for the time spent in federal custody from March 4, 2005 (the date on which he was removed from Canada and arrested by the FBI) through December 14, 2006 (the day before his sentence commenced).

Petitioner then requested that he be given credit for the time that he spent in foreign custody prior to his arrest on March 4, 2005. Accordingly, on December 17, 2009, the BOP asked the Office of International Affairs of the Department of Justice for information regarding the time that Petitioner spent in Canadian custody from November 9, 2004, through March 3, 2005, prior to his removal from Canada. Based on the information received, the BOP concluded as follows:

> "Based on documents contained in the official records, inmate STOJKOWSKI is authorized under Title 18, 3585 § 3585, credit for time detained in Canada on criminal charges, from November 9, 2004, until November 16, 2004.
>
> In addition, contacts with the Department of Justice have advised that inmate STOJKOWSKI was not held in a criminal capacity after November 15, 2004.  It appears that he was arrested by the Canadian Border Patrol Agency for Immigration violations and subsequently deported to the United States.  There was not an extradition in this case."

(Id. at ¶ 15; Attachment 9).  In other words, the BOP authorized Petitioner to receive credit for time served in Canadian custody on criminal charges pursuant to 18 U.S.C. § 3585(b).  However, the BOP did not give Petitioner credit for the time period from November 17, 2004, through March 4, 2005, because Petitioner was not in custody as a result of a criminal detention order, and as such, that time period did not meet the criteria for prior custody credit.

## II.  DISCUSSION

### A.  Petitioner's Request to Strike Portions of the Declaration of Patricia Kitka

As a threshold matter, the Petitioner argues that the Court should strike portions of the Declaration of Patricia Kitka because they contain or are comprised of inadmissible evidence. (Pet.'s Reply, Dkt. 14, at pp. 1-2).  In particular, Petitioner has challenged the following documents: Attachment One, which is the Presentence Investigation Report from his criminal case out of the Northern District of Illinois; Attachment 7, which is a Memorandum dated December 17, 2009, from Patricia Kitka to the Office of International Affairs, requesting verification of information regarding the time that Petitioner was detained in Canada; and paragraphs 4-6 and 8-9 of the Declaration of Patricia Kitka.  Petitioner contends that this evidence is inadmissible because the documents are not certified copies, the evidence is not

based on personal knowledge, and the evidence is comprised of or contains inadmissible hearsay.[4]

First, Petitioner argues that Attachments One and Seven are not certified copies of the documents and that they are therefore not admissible evidence. The Court understands Petitioner to argue that the documents have not been properly authenticated. However, the Court disagrees, as the documents have been properly authenticated pursuant to Rule 901 of the Federal Rules of Evidence.

The Federal Rules of Evidence are applicable to habeas proceedings. See, Fed. R. Ev. 1101(e). Applying the Federal Rules of Evidence, the Court finds that Attachments 1 and 7 have been properly authenticated for purposes of these proceedings. Federal Rule of Evidence 901(a) states that "[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." A matter may be authenticated by testimony from a witness who has knowledge that the matter is what its proponent claims it to be. Fed. R. Evid. 901(b)(1); see also, United States v. Two Elk, 536 F.3d 890, 905 (8th Cir. 2008) ("Rule 901 mandates only that the authentication requirement 'as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims.'") A district court has broad discretion to determine whether a document has been sufficiently authenticated by a witness, and such a determination is reviewed for abuse of discretion. United

---

[4] The Petitioner also asks the Court to strike a portion of the Respondent's Memorandum on the grounds that the facts or conclusions that he makes are not supported by the evidence in the record. (Pet.'s Reply, at p. 2 ¶ 2). The Respondent is entitled to summarize the facts as he understands them, and the Court has reviewed the evidence and has summarized the facts based upon its own review of the evidence. See, pp. 1-4 supra. Therefore, the Court finds that there is no basis for striking any portion of the Respondent's summation of the relevant evidence.

States v. Garrison, 168 F.3d 1089, 1092-93 (8th Cir. 1999). Where a witness authenticates a document as accurate, and the record establishes the witness's qualification to authenticate the document, the district court does not abuse its discretion in finding that the authentication is reliable and the document is authentic. Two Elk, 536 F.3d at 905; United States v. Coohey, 11 F.3d 97, 99 (8th Cir. 1993) (to meet the authentication standard "the proponent need only demonstrate a rational basis for its claim that the evidence is what the proponent asserts it to be").

In her Declaration, Patricia Kitka states that she is employed by the United States Department of Justice, Bureau of Prisons, as a Management Analyst, and that in this position, she has access to criminal judgments, sentencing information, presentence reports, and administrative remedy data. (Kitka Decl., at ¶ 2). Kitka's duties include conducting sentence computations and reviewing existing computations to ensure that sentences are computed correctly and in compliance with statutes, regulations, and BOP policy. (Id.) In addition, Kitka certifies that the Attachments are true and correct copies of records that are maintained in the regular course of the BOP's business. (Id.) As a consequence, the Court concludes that Kitka is qualified to attest to the authenticity of the BOP's records, and that Kitka has demonstrated that the documents are what they are claimed to be. The Court therefore finds that the Attachments have been properly authenticated through Kitka's testimony. See, Fed. R. Evid. 901(b)(1).[5]

---

[5] The Petitioner appears to argue that the documents have not been properly authenticated because they are not certified copies. (See, Pet.'s Reply, at p. 1). However, the Federal Rules of Evidence do not require that a document be a certified a copy. Under Federal Rule of Evidence 902, certified copies of public records are considered self-authenticating, which means that "[e]xtrinsic evidence of authenticity as a condition precedent to admissibility is not required." As described above, Attachments One and Seven have been properly authenticated under F.R.D. 901; certified copies are therefore not necessary.

Moreover, to the extent that Petitioner challenges Attachments One and Seven on the grounds that they contain hearsay, the Court further concludes that they are admissible pursuant to the business records exception to hearsay.  See, Fed. R. Evid. 803(6); United States v. Azure, 801 F.2d 336, 342 (8th Cir. 1986) ("Rule 803(6) calls for a proper foundation to be made through the 'testimony of the custodian or other qualified witness' . . . that a document has been prepared and kept in the course of a regularly-conducted business activity"); United States v. Page, 544 F.2d 982, 987 (8th Cir. 1976) ("In admitting an exhibit into evidence pursuant to Fed. R. Evid. 803(6), it is unnecessary that the identification witness have personal knowledge of the actual creation of the document"); Cobb v. Knode, 2010 WL 3608814 at *2 (D.S.D. Sept. 9, 2010) (recognizing prison is a business for purposes of the business records hearsay exception).  The Court also finds that Kitka's averments contained in Paragraphs 4-6 and 8-9, which are based on her personal knowledge and her review of the official records maintained by the BOP, are not hearsay.  See, Brown v. Armendariz, 2009 WL 812149 at *4 (N.D. Tex. Mar. 26, 2009) ("Because the information is based upon his personal knowledge or knowledge of official business records, he is competent to testify and his statements do not fall within the definition of hearsay").

As a consequence, the Petitioner's objections to the Declaration of Patricia Kitka are overruled.

**B.     The BOP's Computation of Petitioner's Sentence**

---

The Court also finds unpersuasive Petitioner's claim that Attachment One is not authentic because it was not initially attached to Kitka's Declaration.  The Court finds that this was an oversight, which was remedied with the Respondent's submission of the document immediately upon being notified of his mistake.  (Dkt. 12).  The Attachment was properly authenticated through Kitka's testimony, notwithstanding this initial oversight.

A writ of habeas corpus pursuant to 28 U.S.C. § 2241 is a proper means for challenging the BOP's computation of credit for time served.  United States v. Tindall, 455 F.3d 885, 888 (8th Cir. 2006)("Prisoners are entitled to administrative review of the computation of their credits . . . and after properly exhausting these administrative remedies, an inmate may seek judicial review through filing a habeas corpus petition under 28 U.S.C. § 2241"), cert. denied, 549 U.S. 1152 (2007); Matheny v. Morrison, 307 F.3d 709, 711 (8th Cir. 2002)("A petitioner may attack the execution of his sentence through § 2241 in the district where he is incarcerated; a challenge to the validity of the sentence itself must be brought under § 2255 in the district of the sentencing court.")  The Respondent concedes that Petitioner has exhausted his administrative remedies, and the Court will therefore proceed to the merits of his claim.

It is the responsibility of the BOP, once a prison sentence has been imposed, to determine how much credit an inmate should receive for any time spent in custody before service of the present federal sentence commenced.  United States v. Wilson, 503 U.S. 329, 333-35 (1992).  The computation of a federal sentence is governed by 18 U.S.C. § 3585, which defines when a federal sentence commences, as well as under what circumstances a defendant is entitled to credit for time spent in custody prior to the commencement of the sentence.  Here, there is no dispute as to the date on which the federal sentence commenced.  Rather, Petitioner claims that the BOP failed to credit against his federal sentence the time he spent in the custody of Canadian authorities from November 17, 2004, through March 3, 2005 pursuant to Section 3585(b).

According to the statute, prior custody credit is available under the following circumstances:

> "**(b) Credit for prior custody**. – A defendant shall be given credit toward the service of a term of imprisonment for any time he has

8

>     spent in official detention prior to the date the sentence commences–
>
>> **(1)**  as a result of the offense for which the sentence was imposed; or
>>
>> **(2)**  as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed;
>
>     that has not been credited against another sentence."

18 U.S.C. § 3585(b).

The Respondent contends that Petitioner cannot receive credit for the time period in question because the detention did not constitute "official detention" within the meaning of the statute. That is, because he was in custody for immigration charges he was not in official custody for purposes of prior custody credit under Section 3585(b).

The BOP has issued Program Statement 5880.28 of the Sentence Computation Manual (Coyle Decl., Attachment B, Dkt. 7-1), which implements the BOP's policies with respect to the provisions of Section 3585(b).[6] Program Statement 5880.28 authorizes credit for "[t]ime spent in non-federal presentence custody from the date of the federal offense, that does not overlap any other authorized prior custody time credits" and which is related to the offense for which the inmate was convicted. (P.S. 5880.28 at p. 1-14A). P.S. 5880.28 further states that "[o]fficial detention does not include time spent in the custody of the U.S. Immigration and Naturalization Service (INS) . . . pending final determination of deportability. An inmate being held by INS pending a civil deportation determination is not being held in 'official detention' pending criminal charges." (P.S. 5880.28 at p. 1-15A). P.S. 5880.28 also cites several cases for the proposition that detention pending a deportation determination is civil in nature, and therefore it

---

[6]  The Respondent has only attached a portion of Program Statement 5880.28. A full copy of the Program Statement is available at http://www.bop.gov/DataSource/execute/dsPolicyLoc.

does not qualify as "official detention" for purposes of Section 3585(b). See, Ramirez-Osorio v. I.N.S., 745 F.2d 937, 944 (5th Cir. 1984) ("A deportation proceeding is a civil, not a criminal, action"); Shoaee v. I.N.S., 704 F.2d 1079, 1083 (9th Cir. 1983)("it is long established that deportation, while it may be burdensome and severe for the alien, is not a punishment"); Cabral-Avila v. I.N.S., 589 F.2d 957, 959 (9th Cir. 1978) ("The deportation proceeding, despite the severe consequences, has consistently been classified as a civil, rather than a criminal matter"), cert. denied, 440 U.S. 920 (1979).

Moreover, courts addressing similar claims have repeatedly concluded that time spent in the custody of immigration officials awaiting a deportation determination is not "official detention" within the meaning of Section 3585(b). See, Alba-Tovar v. United States, 2006 WL 2792677 at *2 (D. Or. Sept. 22, 2006) ("Petitioner's custody during that time was due to pending administrative deportation proceedings and does not constitute 'official detention' under § 3585(b)" and therefore, the "BOP properly excluded that time in calculating petitioner's time served"); Galan-Paredes v. Hogsten, 2007 WL 30329 at *2 (M.D. Pa. Jan. 3, 2007)(recognizing that there was not very much authority on the issue, but agreeing with the district court cases holding that time spent in civil detention pending the outcome of removal proceedings is not official detention within the meaning of Section 3585(b)) [7]; Guante v. Pugh, 2005 WL 3867597

---

[7] In Galan-Paredes v. Hogsten, the court recognized that time spent in the custody of United States Immigration and Customs Enforcement (ICE) might still be considered "official custody" if the government shifted from holding the Petitioner for removal proceedings to holding him for criminal proceedings. 2007 WL 30329 at *3. In such cases, immigration officials generally learn that the individual being held for immigration violations has illegally re-entered the country subsequent to a prior removal order. Upon learning that the individual has illegally re-entered the country, the Government decided to prosecute the detainee for illegal reentry. As such, the detention would no longer be considered civil or administrative, or in other words, the detention "shifted" from being for the purpose of a civil immigration proceeding to being for the purpose of a criminal prosecution for illegal reentry. In determining whether the

at *2 (S.D.Ga. Dec. 2, 2005) (same); United States v. Acosta-Leal, 2010 WL 4608477 at *2 (S.D.Ill. Nov. 5, 2010)(same); Ghadiri v. Sniezek, 2006 WL 3023034 at *3 (N.D.Ohio Oct. 23, 2006)(same); Decraene v. Winn, 2004 WL 594976 at *3 (D. Mass. Mar. 23, 2004)("given that . . . deportation proceedings are **civil** in nature, petitioner cannot fairly contend that he was, while in the custody of INS awaiting a deportation hearing, he was in custody . . . **as a result of the offense for which the sentence was imposed** . . . or as a result of any other **charge** for which the defendant was **arrested after** the commission of the offense for which the sentence was imposed")[quotations and citations omitted, emphasis in original].

In this case, the record establishes that Petitioner was initially arrested on criminal charges; therefore, the time spent from November 9, 2004 to November 16, 2004, was "official detention" within the meaning of Section 3585(b), and the BOP has already given Petitioner credit for that time. However, on November 16, 2004, Petitioner was released from custody pending criminal charges and he was remanded to the custody of Canadian immigration officials to determine his immigration status and to institute potential removal proceedings. The Court notes that the above case law is based on cases where the individual was in the custody of immigration officials in the United States and not foreign immigration officials. However, the Court finds no reason to believe that it should treat foreign immigration custody any differently, and therefore, the Courts finds the above case law persuasive. Again, while Petitioner's initial custody was criminal in nature, he was released from custody on the criminal charges on November 16, 2004. After that date, Petitioner's custody was civil in nature because he was

---

custody had "shifted", the court found that the "the relevant fact is whether ICE decided to put off removal proceedings in preference to criminal prosecution." Id. at *4.

In this case, there was a shift in the nature of the custody, but the shift does not bring the case in line with the above circumstances. Rather, in this case, Petitioner's custody shifted from being criminal in nature to being civil in nature. Accordingly, after the shift occurred, Petitioner was no longer subject to "official detention" within the meaning of Section 3585(b).

being held pending a determination of his immigration status and for potential removal proceedings. After a hearing, Petitioner was ordered removed from Canada. While his deportation may have taken into account, in part, conduct related to the criminal offense for which he is now incarcerated, that does not change the civil nature of the immigration proceedings after November 16, 2004.[8] As such, the time Petitioner spent in Canadian immigration custody **after** November 16, 2004 does not qualify as "official detention" within the meaning of Section 3585(b). Therefore, Petitioner is not entitled to credit for the time he spent in Canadian immigration custody after November 16, 2004.

Lastly, the Petitioner argues that the BOP has erred in concluding that he was in custody on immigration charges because, in his view, he was lawfully in Canada in 2004. (Pet.'s Reply, at p. 2 ¶ 2). In support of this argument, the Petitioner has submitted copies of his passport, an Ontario driver's license, and his certificate of naturalization, which purportedly establish the legality of his presence in Canada. (Pet.'s Exhs., Dkt. 14-1). Even if these documents provided some evidence that he was lawfully in Canada, the Court finds this issue irrelevant. Whether or not he was initially in fact in Canada legally does not change the nature of the Canadian immigration detention during the time period in question. As already discussed, the record fully establishes that Petitioner was being held during the time in question pending a review of his

---

[8] The Court finds further support for this conclusion based on the fact that Canadian law also defines immigration and deportation as a civil, rather than a criminal, proceeding. See, e.g., R. v. Wooten, 1983 CarswellBC 796 (British Columbia Supreme Court 1984)(Macdonald, J.)("the Immigration Act is not a criminal but a civil statute . . . [and] criminal punishment is not the object of immigration and deportation policies by means of special inquiries"); Said v. Canada (Minister of Employment and Immigration, 1992 Carswell Nat. 197 (Federal Court of Canada 1992)(petitioner's argument that removal from Canada constitutes cruel and unusual treatment or punishment contrary to Canada's Charter "reflects a misperception of immigration proceedings, which are civil in nature and bear no relationship to criminal proceedings. The jurisprudence has clearly established that the purpose of deportation is not to impose penal sanctions against an individual but, rather, to remove from Canada an undesirable person.")

immigration status, and, as a result of that review, he was ultimately deported by Canadian immigration officials. As such, any claim that he was initially lawfully in the country has no bearing on the determination of whether he is entitled to credit under Section 3585(b).

In sum, Petitioner is not entitled to credit for time served in the custody of Canadian immigration officials as this detention was civil in nature, and therefore, the BOP has not erred in the computation of Petitioner's sentence.

### C. Evidentiary Hearing

Petitioner has requested an evidentiary hearing because he contends that the relevant facts are in dispute and Respondents have not submitted any competent, admissible evidence to justify its decision denying him credit for time spent in the custody of Canadian immigration authorities. A habeas petition may be dismissed without an evidentiary hearing "if the record clearly indicates that the petitioner's claims are either barred from review or without merit." Toney v. Gammon, 79 F.3d 693, 697 (8th Cir. 1996) (an evidentiary hearing is warranted if the petitioner "alleges sufficient grounds for release . . . [and] the relevant facts are in dispute"). The Court finds that an evidentiary hearing is not necessary because the record clearly and competently establishes that the BOP has appropriately calculated Petitioner's sentence.[9]

### III. RECOMMENDATION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

---

[9] As set forth in Section II.A., above, the Petitioner's challenges to the Respondent's submissions have been found wanting. Accordingly, contrary to the Petitioner's characterizations, the Respondent has submitted competent, admissible evidence to justify its decision at issue in the habeas Petition.

    1.       Petitioner's habeas corpus petition [Docket No. 1] be DENIED; and

    2.       This action be DISMISSED WITH PREJUDICE.


Dated: April 18, 2011                                      s/Leo I. Brisbois
                                                                LEO I. BRISBOIS
                                                                 United States Magistrate Judge

**N O T I C E**

      Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties **by May 2, 2011,** a writing that specifically identifies the portions of the Report to which objections are made and the bases for each objection. A party may respond to the objections within fourteen days of service thereof. Written submissions by any party shall comply with the applicable word limitations provided for in the Local Rules. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals. This Report and Recommendation does not constitute an order or judgment from the District Court, and it is therefore not directly appealable to the Court of Appeals.